```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JACKPOCKET, INC.,

            Plaintiff,

       v.                                22 Civ. 5772 (LJL)

LOTTOMATRIX NY LLC, et al.,
                                         Remote Conference
            Defendants.
------------------------------x
                                         New York, N.Y.
                                         August 8, 2022
                                         12:00 p.m.
Before:

                    HON. LEWIS J. LIMAN,

                                         District Judge

                         APPEARANCES

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP
     Attorneys for Plaintiff
BY:  DOUGLAS A. RETTEW

SIDLEY AUSTIN LLP
     Attorneys for Defendants
BY:  ROLLIN A. RANSOM
```

1                 (The Court and all parties present remotely)
2                 THE DEPUTY CLERK:  Jackpot v. Lottomatrix.
3                 THE COURT:  Who do I have on the phone for Jackpocket?
4                 MR. RETTEW:  This is Douglas Rettew from the Finnegan
5      law firm.
6                 THE COURT:  Good afternoon, Mr. Rettew.
7                 And for Lottomatrix.
8                 MR. RANSOM:  Good afternoon, your Honor.  This is
9      Rollin Ransom from Sidley Austin.
10                THE COURT:  Good afternoon, Mr. Ransom.
11                I requested this conference as a scheduling
12     conference.  I have the plaintiff's motion for preliminary
13     injunction with the supporting declaration.  I also have the
14     defendant's opposition to the motion for preliminary injunction
15     with the supporting declaration.  I don't yet have the reply
16     papers.  I gather they're not yet due.  And I also have not set
17     a date for hearing on the preliminary injunction.
18                The reason why I requested this call is to get the
19     parties' position -- starting first with the plaintiff and then
20     with the defendant -- as to whether the plaintiff would like
21     and envisions that I would have an evidentiary hearing on the
22     motion for a preliminary injunction or we take it simply on the
23     papers and whether there's any request for discovery in
24     connection with the application for the preliminary injunction.
25     So again, I'll hear first from the plaintiff, and then I'll

1   hear from the defendant, and then I may share some thoughts.

2            MR. RETTEW:  Thank you, your Honor.

3            Your Honor, as you noted, we have not yet filed our
4   reply.  We are working on that.  And that is due tomorrow, so
5   we will be filing that tomorrow.

6            As far as your Honor's question on whether there
7   should be an evidentiary hearing, our thought is, given the
8   declarations, I think they set out the parties' positions
9   clearly.  We don't think there's what need for expedited
10  discovery or an evidentiary hearing, that the matter can be
11  resolved or adjudicated on the papers.  If the Court, if your
12  Honor had any questions or issues, we would welcome a hearing
13  to address that, and then I know we noted that in our moving
14  papers.

15           THE COURT:  Mr. Rettew, I did not study the papers in
16  depth, but I do note that there is an argument made by the
17  defendant that your expert's analysis is not applicable to this
18  kind of case.  And I assume from your answer that you are
19  comfortable with me deciding that issue on the papers, even if
20  I were to decide that adversely to you.

21           MR. RETTEW: Yes, your Honor.  Because we will
22  obviously be addressing that in our reply.  And our position,
23  of course, is that the survey -- our case certainly doesn't
24  live and die on the survey, given the fact that there's actual
25  confusion, we believe, in the marketplace, even before the

1  defendant has entered.  So the survey is a nice thing to have,
2  but not a must-have in our view.
3             THE COURT:  Let me hear from the defendant on the same
4  issue.  Mr. Ransom.
5             MR. RANSOM:  Thank you, your Honor.
6             With the qualifier I haven't seen the reply yet, so I
7  can't speak with great certainty to it, my inclination is the
8  same as Mr. Rettew's, that is, at least with respect to the
9  briefs and documents that have been submitted so far, we
10 believe it's appropriate for the Court to proceed on the papers
11 and not hold an evidentiary hearing.
12            As we have indicated in our opposition papers, we
13 think, frankly, this should be resolved and the case dismissed
14 as a matter of law.  But in any event, with the papers as they
15 have been filed thus far, we think the Court could proceed to
16 rule on them.  Both parties did ask for oral argument, if it
17 would be helpful to the Court, but beyond that, we think the
18 Court can and should proceed with the filings that it has.
19            THE COURT:  So I gather that you've got the same view
20 that with respect to any -- well, do you believe that there are
21 any disputed evidentiary issues, Mr. Ransom?
22            MR. RANSOM:  There may be.  And the one that the Court
23 identified is among them, that is, we have a strenuous
24 dispute -- I expect it to be a strenuous dispute -- over the
25 bona fides of the survey that were submitted with plaintiff's

papers. And we have submitted a declaration from our expert that explains the basis for that dispute.

Again, from my perspective, I think the case does not rise or fall on the merits of the survey or the demerits of the survey. And I'm comfortable, at this stage, with the Court resolving the preliminary injunction motion based on the competing declarations of the experts, its assessment of those criticisms that we have leveled and the authority that we've cited.

THE COURT: The next question I've got to has to do with timing. I intend to turn to this soon, but I have other matters that are pending in front of me and a lot of people wanting quick answers. I note that the plaintiff has not moved for a TRO, and I understand the reason why, in this case, where there are allegations that the plaintiff has known for a long time of the defendant's plan to enter the US market, a TRO may not be the right way to go. But let me ask, in terms of scheduling the oral argument, first, from the plaintiff's perspective, what is the need for expedition in this case? I want to give it careful attention.

MR. RETTEW: Your Honor, we think that -- obviously cognizant and respectful of the Court's schedule -- we're asking for a preliminary injunction to stop the defendant from coming into the United States. They have not yet offered the service. It is not -- to my understanding and from what we've

seen -- something that is actually live. So time is obviously of the essence to stop them before they actually start offering the services. So as soon as the Court could consider the matter, we obviously would be appreciative, and we think that it's important to do so before the defendants come into market, because there already has been, in our view, confusion just based upon their announcement that they're coming.

THE COURT: Mr. Ransom, what I have in mind is oral arguments probably some time in early October with a decision to come shortly after that. That's just because of my calendar and difficulty of doing things in the month of August.

What can you say about your client's plans to enter the United States and that schedule?

MR. RANSOM: I think the plans are moving forward. They're dependent in part on both establishment of an infrastructure and then also regulatory issues. I don't know and I don't have in mind a specific date on which services are likely to go live, but my client is moving forward, as they have been since speaking with Jackpocket those many months ago. So unfortunately, I don't have an answer as to hen it is likely to go live, but I will tell the Court that my client is moving forward.

THE COURT: Let me look at the calendar. Mr. Rettew, I think if I grant oral argument in this case -- I think, frankly, it's a practical matter in order to get it resolved

1     and to study it -- we are looking at early October.
2              Is that going to end up being a problem?
3              MR. RETTEW:  Obviously, again, your Honor, if that's
4     the earliest the Court can do, we appreciate that, and we'll
5     take the earliest date that you have.
6              Again, there's obviously a dispute here over -- I know
7     the defendant says that the plaintiff, Jackpocket, knew for a
8     while, they say, that they were coming to the United States --
9     and we'll address this in our reply -- there actually was not a
10    good indication that they were necessarily coming into the
11    states and doing exactly what it appears they're doing now.  So
12    we will detail why the plaintiff acted responsibly and
13    expeditiously.  Again, confusion has already arisen and it
14    keeps happening -- and we'll detail some more instances that
15    have come up in our reply brief -- but the soonest we can deal
16    with this, if the Court grants a preliminary injunction, we
17    just want the confusion to stop, really, is what it comes down
18    to.
19             THE COURT:  Give me one moment.
20             I would imagine that there's an interest on both sides
21    in me resolving this early so that the parties know their
22    status.  And from defendants' perspective, an early decision is
23    going to be helpful, if it went in their favor, to eliminate
24    the uncertainty involved with their launching a business, as
25    well as from the plaintiff's perspective, if it goes in their

1    favor, any confusion that's already occurring.  I'll check my
2    calendar.
3             MR. RANSOM:  Thank you, your Honor.
4             For defendant, that's correct.  The lawsuit brings a
5    cloud that we think is entirely inappropriate and frankly
6    anticompetitive, so a faster resolution is better for us, as
7    well, subject obviously to the Court's schedule.
8             THE COURT:  I can do oral argument October 5 at
9    11:00 a.m.
10            I recognize that I'm scheduling this for oral argument
11   without there being an evidentiary hearing, without the
12   defendant having had the opportunity to see the reply papers
13   and to address whether, based upon the reply papers, there are
14   any disputed issues of fact and whether the defendant, in light
15   of the reply papers, would want there to be an evidentiary
16   hearing.  In light of that, I'm going to give a date to the
17   defendant to let me know by one week from today, August 15th,
18   definitively whether you want to have an evidentiary hearing or
19   not.  Same thing from the plaintiff.  But I'm going to proceed
20   on the notion that the October 5 date is going to be for oral
21   argument.
22            Is there anything else that would be productive for me
23   to address today from the plaintiff's perspective?
24            MR. RETTEW:  Just one question, your Honor.  For the
25   oral arguments, are you having those live or are they virtual?

M88GjacC

1           THE COURT:  That will be live.
2           I am doing different things in different cases.
3   Sometimes, when the cases will be easily addressed and there
4   are huge burdens for the parties in traveling, then I permit
5   the cases to be addressed remotely.  But in a case like this, I
6   think both parties are well healed enough to be able to make it
7   to the court.  Tell me if I'm wrong about that.
8           MR. RETTEW:  No, no.  Live is always welcome, your
9   Honor, especially after the last couple years, so we appreciate
10  that.
11          THE COURT:  Anything else to address from the
12  defendants' perspective?
13          MR. RANSOM:  I think Mr. Rettew kindly covered my
14  first question, so thank you for the clarification there.
15          The only other issue, your Honor, that I would like to
16  raise, is we had already agreed with plaintiff for an extension
17  of time to respond to the complaint, pushing that to the end of
18  August.  As I noted in our opposition, we have actually asked
19  that the case be dismissed, that's consistent with certain of
20  the authority that we cite, I wonder whether from just a case
21  management and efficiency perspective it wouldn't make sense to
22  push our response date out until after the Court has had an
23  opportunity to rule on the preliminary injunction motion, that
24  is to set our response date for some discrete period of time,
25  two weeks, say, after the Court rules on the preliminary

injunction motion, so that -- frankly, we think the case should be dismissed and expect it will be resolved that way, but if not, we'd have the benefit of the Court's ruling as we evaluate how to move forward.

THE COURT:  You've raised an interesting point, Mr. Ransom.  I did note that, in looking through the papers, that in your opposition to the PI, you asked for -- come pretty close to asking for relief that I don't think you're entitled to without making a motion.  In fact, I think the only thing before me on the PI is whether to grant the PI or not.

So one question to you is whether it would not be more efficient and whether the timing is such that I could get the motion to dismiss briefed in time so that that would be in front of me on October 5 when I have the preliminary injunction.

MR. RANSOM:  We could certainly do it that way, I think, even on our existing schedule, your Honor.  The reason we asked for the relief and I raised the issue now, the primary case that we rely upon, that's precisely what happened.  The district court actually granted the preliminary injunction. The Second Circuit not only reversed but said the district court should have dismissed the case and ordered the case dismissed.  And that's not the only decision within the Second Circuit in which that precise series of events has occurred, not only the PI denied, but the case dismissed seemingly

1  without briefing, the separate and additional briefing on a
2  motion to dismiss.
3         But I raise the issue simply because we want to do it
4  in as efficient a way as possible.  I do think the legal issues
5  are presented in our opposition brief.  But if it would be
6  useful for the Court to have us brief it as a motion to
7  dismiss, we can do that and tie it up with the hearing on the
8  PI motion.  Alternatively, if the Court would like to consider
9  the arguments in the context of the PI motion, that's fine.
10         THE COURT:  I did note that, Mr. Ransom.  I noted that
11 with a little bit of curiosity that the circuit had directed
12 the dismissal of the complaint without it appearing that there
13 was a motion to dismiss.
14         When is your date to move?
15         MR. RANSOM:  Currently, August 29th.
16         THE COURT:  Do you anticipate making arguments in that
17 motion other than the ones that you have now made in front of
18 me on the PI, principally, the argument that the plaintiff here
19 is trying to assert dominion over a descriptive mark?
20         MR. RANSOM:  I don't expect additional arguments on
21 the substance of the claim.  We do have a number of defendants,
22 your Honor, and I don't want to get too far ahead of myself,
23 but I think we have both personal jurisdiction and liability
24 issues with respect to certain of the named defendants.  And I
25 would expect those will be raised in a motion to dismiss.

Again, it will be mooted if the Court resolves the claim on the merits, as we believe it should, but that's the other aspect that may be raised in connection with the motion.  Frankly, I just haven't finally resolved that question yet.

And I also expect we would have a discussion with Mr. Rettew before we would move and to explore whether there's some resolution independent of a motion on those sorts of issues, if necessary.

THE COURT:  One possibility -- I'll turn to in Rettew in a moment -- is that if the parties cannot get the briefing done with respect to defendants as to whom there are personal jurisdiction issues, if there is a defendant as to whom there is personal jurisdiction, but the issue as to liability with respect to descriptive mark is fairly presented, that resolution would effectively resolve the case if I were to decide it in the defendant's favor, we could do the briefing for that defendant or at least I could get the opposition papers and the reply papers to the personal jurisdiction issue decided.

Would that be feasible, Mr. Ransom?

MR. RANSOM:  I believe so, your Honor.

THE COURT:  Let me hear from you, Mr. Rettew.  If the motion is filed on August 29th, the opposition would be due -- I think two weeks after that is the ordinary rule -- and then one week for the reply, would that work for you?

1           MR. RETTEW:  Yes, your Honor.  That would be fine.
2           THE COURT:  So you'll do that.  Why don't you
3    meet-and-confer with respect to how to handle the defendants as
4    to whom there are personal jurisdiction or individual issues,
5    other than the central issue presented by the defendants'
6    opposition to the preliminary injunction, send me a letter by a
7    week from today as to what you have agreed with respect to
8    that, but we will plan for the motion to dismiss and the PI to
9    be fully submitted in advance of October 5.  And October 5,
10   I'll have argument on both the motion to dismiss, including the
11   descriptive argument, and the PI.
12          Anything else from you, Mr. Ransom?
13          MR. RANSOM:  No, your Honor.
14          MR. RETTEW:  I think this works nicely, because in our
15   reply that we will be filing tomorrow, obviously, we'll be
16   addressing the descriptive use argument and why we disagree
17   with it, and the American case and why we believe it is
18   distinguishable.  So that will hit the substance of the merits
19   on this whole notion of dismissal, and then of course we can
20   deal with any jurisdictional issues on a separate motion.  That
21   seems to make perfect sense.  So we agree and appreciate that,
22   your Honor.
23          THE COURT:  So let me know by letter a week from today
24   both on the evidentiary -- assuming, again, we're not going to
25   have an evidentiary hearing here -- as well as the timing with

1   respect to the motion to dismiss.

2            MR. RANSOM:  Your Honor, I want to make sure I
3   understood the Court correctly, because what Mr. Rettew said
4   I'm not sure aligned with my understanding of what the Court
5   was suggesting.  I thought the Court suggested that we discus
6   deferring the personal jurisdiction challenge until after
7   resolution of the PI motion, but that we, as defendants, should
8   go ahead and bring a motion to dismiss as to the substantive
9   issues that align with our opposition brief in the PI motion.

10           THE COURT:  What I was suggesting was that you would
11  make your motion to dismiss on all of the grounds, but that the
12  completion of the briefing with respect to personal
13  jurisdiction and the other issues need not take place in
14  advance of October 5.

15           MR. RANSOM:  Understood.  And I'm sure I can work with
16  Mr. Rettew to figure out documenting that in a way that is
17  clear to all.  Thank you.

18           THE COURT:  Have a good afternoon everybody, stay safe
19  and stay healthy, and see you on October 5.

20           (Adjourned)