```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JACKPOCKET, INC.,

            Plaintiff,

      v.                            22 CV 5772 (LJL)

LOTTOMATRIX NY LLC, et al.,

            Defendants.             Conference
                                    (via Telephone)
------------------------------x
                                    New York, N.Y.
                                    October 4, 2022
                                    12:30 p.m.
Before:

            HON. LEWIS J. LIMAN,

                                    District Judge


                       APPEARANCES

FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP
     Attorneys for Plaintiff
BY:  DOUGLAS A. RETTEW
     PATRICK J. RODGERS
     MARY KATE BRENNAN

QUINN EMANUEL URQUHART & SULLIVAN LLP
     Attorneys for Defendants
BY:  RACHEL E. EPSTEIN
     DONALD J. REINHARD
     TODD ANTEN
```

1                    (Case called)
2          THE COURT:  Who do I have on for the plaintiff?
3          MR. RETTEW:  Your Honor, this is Doug Rettew from
4    Finnegan Henderson here on behalf of the plaintiff.  I have
5    with me my colleagues, Patrick Rodgers and Mary Kate Brennan.
6          THE COURT:  Who do I have on for defendant?
7          MS. EPSTEIN:  Good afternoon, your Honor, Rachel
8    Epstein from Quinn Emanuel for defendants, and I have my
9    colleagues Todd Anten and Don Reinhard with me.
10         THE COURT:  Good afternoon, Ms. Epstein.
11              I want to discuss with you all the hearing for October
12   11 and then how to bring this to conclusion with respect to the
13   permanent injunction.
14              Mr. Rettew, I am going to start with you.  You
15   objected to me consolidating the preliminary injunction with a
16   hearing on the permanent injunction and accelerating that.
17   What's the basis for your objection?
18         MR. RETTEW:  Your Honor, we obviously are moving
19   forward with the preliminary injunction before the Court next
20   week, but we have requested a jury trial in this case.  So our
21   preference is to have your Honor adjudicate the preliminary
22   injunction and then for us to finish discovery and then
23   eventually have the full trial before a jury.
24         THE COURT:  With respect to your request for
25   injunctive relief and an accounting under the federal trademark

1  law, you don't disagree, do you, that those are matters for me
2  and not for a jury?
3             MR. RETTEW:  The injunction for sure, your Honor, but
4  the issue of monetary damages would be one for a jury.
5             THE COURT:  For an accounting under the Lanham Act?
6             MR. RETTEW:  Yes.  For actual damages, your Honor, I
7  believe that does trigger the right to a jury.
8             THE COURT:  I had asked about for an accounting.
9             MR. RETTEW:  I'm sorry, yes.  Accounting of profits,
10 your Honor.  If it's purely equitable, then that would be
11 equitable.  But for a claim for damages vis-a-vis reasonable
12 royalty or diminution of brand, that would be a damage that
13 would trigger the right to a jury.
14            THE COURT:  Is there any reason, Mr. Rettew, that it
15 wouldn't be efficient and wise for me to try the injunctive
16 case just itself and then, depending on how that comes out, if
17 there is a basis for a claim for damages, I'll deal with that
18 later on and you can try that later on?
19            MR. RETTEW:  I think, your Honor, if your Honor issued
20 an injunction, then we would absolutely -- we would have no
21 issue.
22            THE COURT:  No.  You're mishearing me.  What I'm
23 saying is that I would be prepared to address your final
24 request for an injunction and your final request for an
25 accounting.  You can try everything that is tried to me.

1          If there is anything that remains after you have tried

2   everything that gets tried to me that gets tried to a jury, we

3   can at that point discuss scheduling the jury trial and

4   conducting the jury trial in a way that does not infringe at

5   all on your client's Seventh Amendment rights.

6          MR. RETTEW:  Yes.  Your Honor, forgive me.  I just

7   want to make sure I understand it correctly.  I think if your

8   Honor adjudicates the preliminary injunction, then that would

9   be the preliminary injunction.  But then the jury would still

10  have the ability to adjudicate whether there would be -- your

11  Honor has the equitable power on the final injunction, but

12  typically I think that would go before a jury as well.

13         Is your Honor thinking of a bifurcation where it would

14  only be monetary damages?

15         THE COURT:  I'm not thinking of an advisory jury with

16  respect to your request for injunctive relief.  To be

17  specific -- and then, Ms. Epstein, I will turn to you -- I'm

18  thinking that we will start on October 11.  You will present

19  your case.  The defendants will present whatever case they want

20  to on October 11.  And then we will continue on November 14.

21  And on November 14, I will issue a ruling with respect to

22  whether there is permanent injunctive relief that's appropriate

23  in this case.

24         You can make your claim for a preliminary injunction

25  right after we have the hearing on the week of the 11th next

1  week.  The evidence that is offered at the time of the
2  preliminary injunction will all be before me in connection with
3  the permanent injunction, but I am going to resolve this case
4  in terms of the request for injunctive relief quickly and final
5  injunctive relief.
6       MR. RETTEW:  Your Honor, one concern we have is that
7  while we believe we have strong evidence for a preliminary
8  injunction, one concern we have is, we have done expedited
9  discovery, but there is more to be done and there are more
10  depositions and potentially some discovery disputes and other
11  issues.  Obviously, we are concerned that November 14 would be
12  too quick to resolve the remaining issues that we would have
13  apart from the preliminary injunction.
14       THE COURT:  Well, tell me what it is that you would
15  need that you are not getting and that would prevent you from
16  trying the permanent injunction by November 14.
17       MR. RETTEW:  One issue, your Honor, is, we requested
18  documents -- there is a document request for the documents that
19  the defendants have that have the word -- the term, the
20  trademark Jackpot in it, and there has been a dispute on
21  whether that is too burdensome.  I know the defendant said
22  there were around 2,000 hits.  We have asked for that, and
23  that's one area of disagreement.
24       The other issue too is, we have taken depositions of
25  the main witnesses, but there are other potential witnesses

1  that need to be deposed.  The witness yesterday for the
2  defendant knew some stuff, but there was a lot of things he
3  didn't know, so that potentially we had have to depose some
4  other witnesses.  So we have the issue on the documents, the
5  production, and then also, again, potentially some other
6  depositions that would need to be taken.
7            THE COURT:  How many depositions?
8            MR. RETTEW:  I would say, just from yesterday,
9  probably there is at least two people we have identified that
10 would also need to be deposed.
11           THE COURT:  Who are those individuals?
12           MR. RETTEW:  One is Roy Moore, and potentially the
13 defendant's U.S. CEO, Akshay Khanna.  This deposition went late
14 last night and there may be one or two other names.  I'm not
15 certain offhand, your Honor.  I know there were at least two
16 names of people that potentially would need to be deposed also.
17           THE COURT:  We are now on October 4.  Is there a
18 reason why those depositions couldn't be done in the next
19 month?
20           MR. RETTEW:  I suppose we could.  My concern was with
21 all of the different things that need to be done, your Honor,
22 but we could certainly keep sprinting.
23           THE COURT:  Is there anything else that would prevent
24 this case from being tried and completed with respect to the
25 request for equitable relief by Thanksgiving?

1  MR. RETTEW:  I would say, your Honor, I'm pausing just
2  because the discovery has been fast and furious and there are
3  deficiencies that we have all been identifying, and I would
4  have to sit down.  There are going to be some more things that
5  we will probably need to bring before the Court on just the
6  scope of discovery and what has been produced and what has not
7  been produced.  I would envision that may be likely.
8  THE COURT:  Ms. Epstein, let me hear from you.
9  MS. EPSTEIN:  Of course, your Honor.
10  I am going to try to take this in order.
11  First of all, we think that this plan makes perfect
12  sense, as we put in our letter, and we don't actually believe
13  that currently there is any right to a jury trial.  As your
14  Honor noted, both the accounting and the equitable or the
15  injunctive relief are equitable and don't give rise to a jury
16  trial.
17  Further, there can't be any actual damage, as we
18  haven't started offering our product in the United States, and
19  I raised this previously with Mr. Rettew.
20  So our view is, as of now, there is no jury trial to
21  be had.  And of course to the extent that we voluntarily go
22  into the market and potentially cause damage, that's of course
23  a risk that we take with our eyes wide open.  As of now, we
24  don't think that there is anything other than a bench trial to
25  be had in this case.

1          In terms of the discovery, we may also want to take a
2   couple of more depositions, and of course there are
3   deficiencies that the other side has, but we don't see any
4   reason that we couldn't get this done in time for a trial
5   before Thanksgiving.
6          For us, it really is an existential threat.  This is
7   an URL that we have been doing business under for the better
8   part of a decade.  Plaintiffs have been aware of us since at
9   least 2015.  Plaintiff -- we deposed their CEO the other day
10  and it became very clear that he had our step-by-step entry
11  plan into the U.S., but that he didn't credit it and therefore
12  took no action because he felt it was aspirational because we
13  had not yet rented off his space, if I'm paraphrasing a bit.
14         Essentially, they sat on this and let us raise capital
15  under this name, let us move forward with launch, and now our
16  launch has been delayed as a result of this suit.  So it's very
17  important for us to get this resolved as expeditiously as
18  possible.
19         THE COURT:  Let me ask a couple of other questions,
20  first to the plaintiff.
21         On the understanding that we are going next week, at
22  least with respect to your request for preliminary injunctive
23  relief, who are your witnesses who you would present next week?
24         MR. RETTEW:  Next week, your Honor, we present the
25  CEO, Mr. Sullivan, and then our survey expert.

1           As we noted at the last conference, we have agreed to
2  submit those by written declaration, and they will just be
3  cross-examined at the hearing, given the timing.
4           But I just want to note that I do disagree with
5  counsel's recitation of the merits, and I'm happy to address
6  those with your Honor, but I'm happy not to, if you don't want
7  to hear that.
8           THE COURT:  I will hear them.  I don't want to cut you
9  off.  Let me just ask the questions that I've got and then I'll
10 come back to you.
11          My recollection from our last conversation is that we
12 have not set a date certain for the declarations.  Frankly,
13 given the timing of this, I would be fine if you get them to me
14 really any time before the hearing sufficient for me to be able
15 to review them in advance of a hearing.
16          Have you discussed, Mr. Rettew, with your adversary
17 the timing of the submission of the declarations?
18          MR. RETTEW:  Yes, your Honor.  The date we were
19 talking about was to exchange them on Sunday night.
20          THE COURT:  That makes a lot of sense.  From my
21 perspective, that gives me all of Monday and it gives you all
22 of Monday to look at them.
23          Mr. Rettew, before I turn back to you, let me go back
24 to Ms. Epstein.
25          Ms. Epstein, who would your witnesses be for next

1   week?

2   MS. EPSTEIN:  Your Honor, we will have Yariv Ron, who
3   is our international CEO, and we will have our survey expert
4   Dr. Itamar Simonson, our survey expert.

5   THE COURT:  Ms. Epstein, I take it that what I heard
6   from Mr. Rettew also reflects your agreement that by Sunday
7   night you'll exchange the declarations and you will submit them
8   to the Court?

9   MS. EPSTEIN:  Yes, your Honor.

10  THE COURT:  In terms of the submission of them to the
11  Court, just to discuss logistics for a moment, these need not
12  be filed.  They will be marked as exhibits, as court exhibits
13  and made part of the record of the hearing.  You can email them
14  to the Court chambers email.  If there are documents or
15  exhibits that are bulky, you can either email the exhibits to
16  us or you can be on the phone with my courtroom deputy -- we
17  don't need the court reporter for this -- who can give you
18  instructions on how to transmit them to us through the email
19  tools and the electronic tools whose names I don't remember.
20  But I'd like all that by Sunday night and hard copies of
21  declarations and the exhibits on Monday, two copies, one for me
22  and one for my law clerk, so that I can have them on the bench
23  on Tuesday.

24  The way Tuesday will proceed is that when the witness
25  is called, I will mark the declaration as a court exhibit.  I

1   will ask the witness whether, understanding that the
2   declaration is intended to be their direct testimony in the
3   case, they swear or affirm to the truth of the statements in
4   it.  Assuming that they do so swear, the declarations will be
5   admitted into evidence and then cross-examination will proceed.
6           I have never had a witness say that they do not swear
7   to the truth of the declaration.  If that happens, we will
8   figure out what to do on the spot.
9           If there are objections as to any of the statements in
10  the declarations, you can raise them to me by letter submitted
11  on Monday, but keep in mind that this will be a trial to the
12  Court, and I'm perfectly capable of understanding the weight of
13  evidence and, in all likelihood, if there is a substantial
14  evidentiary issue, I would reserve on it because it very well
15  may be the case that I don't need to resolve that evidentiary
16  issue.
17          Any questions about that, Mr. Rettew, before I return
18  to the points that you wanted to make about the --
19          MR. RETTEW:  No, your Honor.
20          THE COURT:  Ms. Epstein, any comments or objections?
21          MS. EPSTEIN:  The only question, your Honor, is for
22  hard-copy deliveries, will the Court be open on Monday?  I
23  believe it's a holiday.
24          THE COURT:  Good point.  Why don't you make sure you
25  bring them with you on Tuesday morning.

1            MS. EPSTEIN:  Of course, your Honor, which actually
2   remind me of a related point that Mr. Rettew and I had
3   discussed, which is technology in the courtroom.
4            THE COURT:  If you need court orders, submit them to
5   me, which you can do by email.  If you need to come into the
6   courtroom to test out anything, Matt, correct me if I'm wrong,
7   talking to my courtroom deputy, but I think this Thursday or
8   Friday might work for that.
9            Matt.
10           THE DEPUTY CLERK:  Yes, that's right, judge.  Thursday
11  or Friday if counsel wants to come in and test that equipment,
12  it would be fine.
13           MS. EPSTEIN:  Thank you.  Perhaps we will get together
14  and have our trial assistants get in touch with the courtroom
15  deputy, if that makes the most sense.
16           THE COURT:  That does.  Thank you.  If you are able to
17  have the personnel on both sides come in at the same time, I
18  think that would be easiest for the Court and probably
19  eliminates any issues.  Ms. Epstein, you will work on that.
20           Mr. Rettew, you wanted to say something?
21           MR. RETTEW:  Yes, your Honor.  I just wanted to
22  respond to Ms. Epstein's point about the domain name.  We will
23  show this next week.
24           I think one critical part of this case is, although
25  the defendant has owned his domain name for several years, it

has not operated in the United States and it has not offered the services at issue in the United States that are at play here.

And our injunction that we are seeking is not against the domain name itself, but against the very specific issue of their trademark Jackpot in connection with the very specific service, which is lottery courier services.

I just wanted to comment on that because it is not the case that the plaintiff has been sitting by watching the defendant operate. It hasn't even started operating in the United States, which is why we believe that the time is right for a motion for preliminary injunction, because they have not even come here yet and that has already caused actual confusion, which we will show your Honor.

THE COURT: That's helpful. I have looked at the papers in the case, and I think I understand the issues on both sides.

We will then have a hearing on the application for the preliminary injunction which will start on October 11.

On November 14, we will have a trial to the Court of the request for the permanent injunction and equitable relief, including the request for an accounting. I'll give you the time that we will start in a moment on that.

The testimony that will be received next week will also be considered by the Court in connection with a permanent

1  injunction hearing beginning on November 14.  But on November

2  14, anything that you didn't offer earlier which is not

3  redundant or duplicative of what I'm hearing next week, you

4  will be able to present the plaintiff going first and then the

5  defendant.

6         Matt, I would think on November 14 we could start at

7  9:30 in the morning, if that makes sense.

8         THE DEPUTY CLERK:  Yes, that's right, Judge, we can.

9         THE COURT:  9:30, Mr. Rettew?

10        MR. RETTEW:  Yes, your Honor.

11        One question, your Honor.  How many days would your

12 Honor anticipate?  This being a one-day hearing?

13        THE COURT:  On the 14th?

14        MR. RETTEW:  Yes.

15        THE COURT:  I think I've got that week free.  I'm not

16 inviting you to use up the entire week, but I do have that week

17 free and we can discuss next week, after you have had time to

18 think about it, how much time you are going to need, and I'll

19 hear from the defendant how much time they are going to need.

20        MR. RETTEW:  Thank you, your Honor.

21        The one reason I want to raise this, the timing on

22 that particular week, is particularly, there is one issue I

23 have.  That is, I had scheduled a short several-day vacation to

24 go visit my daughter, but it wasn't going to be until

25 Wednesday.  I'm hoping we would be done by then and hopefully

1   that would be -- having done the preliminary injunction and
2   having that evidence, I can't imagine it would take more than
3   two days, but I just wanted to raise that one issue.
4              THE COURT:  Actually, Mr. Rettew, if on the margin
5   getting an extra half hour or hour on the Monday and Tuesday
6   would permit us to finish and you to keep your commitments, the
7   Court would be prepared to start at 9:00 in the morning and go
8   a little bit later each of the days, Monday and Tuesday.
9              MR. RETTEW:  Thank you, your Honor.
10             THE COURT:  Ms. Epstein, anything from you?
11             MS. EPSTEIN:  Just a couple of questions in terms of,
12  what time are we starting next week?  The same time as set?
13             THE COURT:  Let me look at the calendar.  You should
14  get to the courtroom by 8:30 or 9, and I think we will start
15  promptly at 9:30 in the morning.
16             MS. EPSTEIN:  OK, your Honor.  I believe it was
17  currently set for noon.  Your Honor would prefer us in the
18  morning?
19             THE COURT:  I can do the morning, if that works for
20  you and it works for Mr. Rettew.  You are right, it is set for
21  noon.  But I can start earlier, Ms. Epstein.
22             MS. EPSTEIN:  I defer to Mr. Rettew on that.
23             THE COURT:  Mr. Rettew.
24             MR. RETTEW:  Yes, we can do that, your Honor.
25             THE COURT:  Let's start at 9:30.

1    MS. EPSTEIN:  Our other question, I think that
2  Mr. Rettew and I had discussed whether your Honor would like
3  openings and closings next week or if you would prefer a legal
4  argument or if you would prefer neither.
5    THE COURT:  I don't need opening statements.  I've got
6  the briefs.  I think it would be helpful to have closing
7  statements and to have closing statements that are directed
8  both to the evidence that I will hear and to the law, because
9  there are a lot of legal issues the two of you have raised.  I
10 think, given that we have got declarations, we can proceed to
11 argument and closing statements right after the close of the
12 evidence.
13   MS. EPSTEIN:  Absolutely, your Honor.
14   THE COURT:  I've got a couple of things for next week
15 that are not easily moved.  One of them is a proceeding that
16 I've got at 2:00 on the Wednesday that should last for about an
17 hour and a half.  The other things I think I've got can
18 probably be moved.
19   Do you have a sense, from the defendant's perspective,
20 how long your cross-examinations are going to last?
21   MS. EPSTEIN:  I think, your Honor, that we will be
22 able to finish both sides in one day, unless Mr. Rettew
23 disagrees.
24   MR. RETTEW:  I would agree with that, your Honor.
25   THE COURT:  Good.

1                I had one other thing for you, Ms. Epstein, unless you
2     have anything else for me.
3                MS. EPSTEIN:  No, your Honor.
4                THE COURT:  The one thing that I've been puzzling
5     about a little bit, but I think I have the answer, is a couple
6     of your clients have asserted objections on the basis of
7     personal jurisdiction.  I don't think that I need to resolve
8     those issues when I have the trial with respect to the
9     permanent injunction and equitable relief.  If there remain
10    issues with respect to those individual defendants, I believe
11    that I can address those after the 14th.  In other words, the
12    hearing on the 14th would be with respect to the client of
13    yours as to whom there is clearly personal jurisdiction.
14               MS. EPSTEIN:  We agree with that, your Honor, assuming
15    that our appearance is on a nonwaiver basis of any personal
16    jurisdiction issues.
17               THE COURT:  Mr. Rettew, any objection to that?
18               MR. RETTEW:  No, your Honor.
19               THE COURT:  Anything else, Mr. Rettew?
20               MR. RETTEW:  One other question for your Honor.  For
21    the hearing on the 14th, would you envision that we would do it
22    like the preliminary injunction hearing in that the direct
23    testimony would come in by declaration, if there is testimony
24    beyond what we have, or are you thinking, because it's just a
25    bench trial, that it is something else?

1        THE COURT:  I think it would be most efficient if it
2   comes in by declaration.
3        MR. RETTEW:  The 14th would be similar to the PI, but
4   it would be any additional evidence that we would want to
5   submit.
6        THE COURT:  Correct.
7        MR. RETTEW:  Thank you.
8        THE COURT:  Ms. Epstein, anything?
9        MS. EPSTEIN:  No, thank you, your Honor.
10       THE COURT:  I will ask you both to order a copy of the
11  transcript on an expedited basis, and that request will
12  continue on through the two hearings, that you order copies of
13  the transcript on an expedited basis.  It's just much helpful
14  for the Court to have it.
15       Stay on with the court reporter and my deputy about
16  the ordering of the transcript and about any logistics for
17  testing out equipment for next week.
18       Thank you, all.
19       (Adjourned)