UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

: 

JACKPOCKET, INC.,                                                    :

: 

                    Plaintiff,                                 :

: 

             -v-                                            :           22-cv-5772 (LJL)

: 

LOTTOMATRIX NY LLC, *et al.*,                                       :        OPINION AND ORDER

: 

                  Defendants.                                :

: 

---------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendants Lottomatrix NY LLC, Lottomatrix Corporation, Lottomatrix Operations

Limited d/b/a Jackpot.com, Lottomatrix Malta Limited, and 99Dynamics Limited ("Defendants

or "Jackpot.com") move, pursuant to 15 U.S.C. § 1117(a) and Federal Rule of Civil Procedure

54(d), for an award of reasonable attorneys' fees and related non-taxable expenses and for leave

to file a fee application detailing their requested attorneys' fees and related nontaxable expenses.

Dkt. No. 142.

      For the following reasons, the motion for attorneys' fees is denied.

## BACKGROUND

      Familiarity with the procedural history of this case and the Court's prior findings of fact

and conclusions of law in its Opinion and Order denying the motion of plaintiff Jackpocket, Inc.

("Plaintiff" or "Jackpocket") for a permanent injunction, Dkt. No. 125 is presumed.

      At the time the Court issued its findings of fact and conclusions of law, Plaintiff sold

lottery tickets online in thirteen U.S. states and the District of Columbia. *Id*. at 1.  Defendants

operated an internet gambling website internationally and hoped to sell lottery tickets

electronically in the United States. *Id.*  Plaintiff filed the action on July 7, 2022, seeking, *inter*

*alia*, (1) a declaration that Jackpot's use of the marks JACKPOT and JACKPOT.COM (the "JACKPOT.COM Marks") infringes on the JACKPOCKET and JACKPOCKET.COM marks (the "JACKPOCKET Marks"), dilutes the JACKPOCKET Marks, and constitutes false advertising and unfair competition, and (2) an injunction preventing Jackpot.com from "using, registering, or seeking to register any name, mark, logo, trade name, company name, source identifier, or designation comprised of or containing the JACKPOCKET Marks or any other confusingly similar name, mark, logo, trade name, company name, source identifier, or designation (including JACKPOT) in any manner likely to cause confusion with Jackpocket's JACKPOCKET Marks, or to otherwise injure Jackpocket and/or its reputation."  Dkt. No. 1 at ECF pp. 28–29.[1]  Plaintiff asserted five causes of action in support of that requested relief: federal trademark infringement in violation of 15 U.S.C. § 1114(1); federal trademark infringement, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A); New York common law trademark infringement and unfair competition; deceptive business practices in violation of New York General Business Law § 349; and trademark dilution in violation of New York General Business Law § 360.  *See id.* ¶¶ 56–66.

After Plaintiff filed a motion for a preliminary injunction seeking to enjoin Defendants from using the JACKPOT.COM Marks during the pendency of this action, Dkt. No. 19, the Court granted Defendants' motion for limited expedited discovery and converted the oral argument scheduled for the preliminary injunction into an evidentiary hearing, Dkt. No. 79.

---

[1] Plaintiff also sought an order directing Jackpot.com to immediately retract and destroy, *inter alia*, all products and advertising containing the JACKPOT.COM Marks; an order directing Jackpot.com to file with the Court within thirty days after the entry of the injunction, a certificate of compliance with the injunction, detailing "the manner and form in which Jackpot[.com] complied with the injunction"; an accounting of profits; punitive damages; damages; and costs and attorneys' fees.  Dkt. No. 1 at ECF pp. 29–30.

During the evidentiary hearing, the Court consolidated the hearing on the motion for a preliminary injunction with a trial on the merits under Federal Rule of Civil Procedure 65.  *See* Preliminary Injunction Evidentiary Hearing Transcript 347–48.  The Court conducted a half-day bench trial on Plaintiff's equitable claims and Defendants' defenses on November 17, 2022. Minute Entry (Nov. 17, 2022).

On December 7, 2022, the Court issued its findings of fact and conclusions of law denying the request for equitable relief and a permanent injunction.  Dkt. No. 125; *see Jackpocket, Inc. v. Lottomatrix NY LLC*, 2022 WL 17733156, at *1 (S.D.N.Y. Dec. 7, 2022). The Court held that Plaintiff proved that its JACKPOCKET mark was both valid and incontestable and that its JACKPOCKET.COM mark was entitled to protection because it would qualify for registration.  Dkt. No. 125 at 52–53.  The Court rejected Defendants' argument that it was entitled to continue to use the JACKPOT.COM mark because it had been widely used in commerce before Jackpocket started using its mark.  *Id.* at 53–61.  Defendants' prior use of the JACKPOT.COM mark was entirely outside the United States and thus Defendants did not establish prior use based on the territoriality principle.  *Id.* at 55–56.  The Court also rejected Defendants' argument that Plaintiff's infringement claim failed as a matter of law based on the Second Circuit's decision in *American Cyanamid Corp. v. Connaught Laboratories, Inc.*, 800 F.2d 306 (2d Cir. 1986).  Dkt. No. 125 at 64–66.

After examining the eight *Polaroid* factors, *see Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), however, the Court concluded that Plaintiff had not satisfied its burden of showing a probability of confusion between the JACKPOCKET and JACKPOT.COM Marks and thus was not entitled to injunctive relief.  The Court found that JACKPOCKET was a suggestive mark.  Dkt. No. 125 at 53, 66, 69–70.  Applying the Second

3

Circuit's framework in *RiseAndShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112 (2d Cir. 2022), however, the Court concluded that Plaintiff's marks were "weak" suggestive marks because they immediately communicated the qualities and characteristics of Jackpocket's services.  A "jackpot," the Court concluded, was a key ingredient of all lotteries, and by joining "jackpot" with "pocket," the marks conjured up the essential part of the product offered by Jackpocket—an opportunity to win the top prize in a game of chance.  Dkt. No. 125 at 71–72.  Having concluded that Plaintiff's marks were inherently weak, the Court then analyzed whether the marks had "acquired strength" or secondary meaning and concluded that they had not.  Although Plaintiff had spent sizable amounts of money to promote the JACKPOCKET Marks and its lottery courier services and that advertising had led to sales success, Jackpocket failed to establish that its advertising expenditures and sales were successful in associating Jackpocket's products with their source, the essential element of the acquired strength analysis.  *Id.* at 79–81.

Turing to the second *Polaroid* factor, the Court founds that although the JACKPOCKET and JACKPOT.COM Marks are similar in sound and appearance, "the shared use of an ordinary word" was "'not enough to render the two products confusingly similar,'" and the visual dissimilarity of the two marks indicated that there was a low likelihood of confusion between the sources of the two products.  *Id.* at 94–97 (quoting *RiseAndShine Corp.*, 41 F.4th at 125).  The proximity of the products—the third *Polaroid* factor—favored Plaintiff because the two parties were proposing to offer the same services, while the bridging the gap factor—the fourth *Polaroid* factor—was neutral.  *Id.* at 99–101.  The Court, however, found that the actual confusion factor—the fifth *Polaroid* factor—favored Defendants: the anecdotal evidence of confusion from before and after Jackpot.com announced its entry into the U.S. market reflected the weakness of the JACKPOCKET Marks and Jackpocket's survey evidence failed to establish that there would

4

be a likelihood of confusion when Jackpot.com launched its product in the United States.  *Id.* at 101–20.  The sixth *Polaroid* factor, the good faith of the alleged infringer, favored Defendants. The Court found that Defendants did not use the JACKPOT.COM mark with the intent to exploit Jackpocket's reputation; they used the mark because Defendants have operated a consumer-facing website under the JACKPOT.COM mark for nearly six years.  *Id.* at 121.  The seventh factor—the quality of the junior user's products—was neutral.  There was nothing in the record to suggest that Jackpot.com's products would be of inferior quality.  *Id.* at 123–25.  Finally, the eighth factor, the sophistication of the customer, favored Defendants.  The Court concluded that the relevant consumer decision was the one taken to register for a lottery courier service account, not to purchase a lottery ticket once registered, and "during that decision, customers exercise a high degree of caution."  *Id.* at 125.

Balancing the *Polaroid* factors, the Court concluded that Plaintiff had not established its entitlement to an injunction.  Plaintiff had not presented evidence that an injunction was necessary to protect the goodwill it had developed in its trademarks from misappropriation, as there was no evidence that it had developed any goodwill.  *Id.* at 127.  Nor was an injunction necessary to protect consumers from any confusion as to the source of Plaintiff's and Defendants' products, because there was no evidence that consumers identify Plaintiff's lottery courier services by their source.  *Id.*  Instead, the Court concluded, an injunction would have the effect of preventing Defendants from using a mark that they had long used internationally and that was descriptive of the products that both Plaintiff and Defendants offered, which would impermissibly impede competition.  *Id.*

For the sake of completeness, the Court discussed Defendants' affirmative defenses, and rejected each of them.  Defendants did not establish the affirmative defense of laches or

acquiescence.  *Id.* at 128–31.  Defendants also did not establish that Plaintiff had unclean hands

or engaged in trademark misuse.  The Court found that it need not analyze whether Plaintiff had

engaged in anti-competitive activity, because the conduct that Defendants alleged constituted

unclean hands or trademark misuse was—with one potential exception—collateral to

Jackpocket's efforts to protect its trademark.  *Id.* at 133.  The one exception was Plaintiff's

decision to add ".com" to its Jackpocket logo, which the evidence supported was done so that the

Jackpocket logo would more closely resemble Jackpot.com's logo.  *Id.* at 134.  Though this

action "bespeak[s] bad faith," the Court concluded that such conduct would not alone deprive

Plaintiff of the right to an injunction had it established such a right based on the *Polaroid* factors.

*Id.* at 135.

On December 29, 2022, absent objection from Plaintiff, *see* Dkt. No. 135, the Court

entered final judgment for Defendants, Dkt. No. 137.

## PROCEDURAL HISTORY

Defendants filed their motion for an award of attorneys' fees and supporting

memorandum of law and declaration on January 17, 2023.  Dkt. Nos. 142, 144–45.  Defendants

filed a response in opposition and supporting declarations on February 7, 2023, Dkt. Nos. 152–

55, to which Defendants replied on February 21, 2023, Dkt. No. 162.  In its reply, Jackpot.com

argued for the first time that the evidence that Jackpocket submitted in its opposition motion

should be stricken.  *See id.* at 2–4.  Plaintiff moved to file a sur-reply to address Defendants'

argument on February 24, 2023, Dkt. No. 164, which the Court granted the next day, Dkt. No.

165.  Plaintiff filed its sur-reply on February 26, 2023.  Dkt. No. 166.

## DISCUSSION

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may

award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  "[A]n

'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *see also Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530 (2d Cir. 2018) (adopting the *Octane Fitness* standard for fee applications under Section 35(a) of the Lanham Act). District courts are "encouraged" "to evaluate the totality of the circumstances" and "a wide variety of factors, including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Sleepy's LLC*, 909 F.3d at 530 (quoting *Octane Fitness*, 572 U.S. at 554 n.6). "Although . . . *Octane Fitness* provides district courts with broad discretion to award attorney's fees, it still demands that courts engage in a 'case-by-case exercise of their discretion, considering the totality of the circumstances' in determining whether the case is 'one that stands out from others,' so as to warrant an award of fees." *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019) (quoting *Octane Fitness*, 572 U.S. at 554).

Defendants argue that this case is an exceptional one and that they are entitled to an award of attorneys' fees because (1) Plaintiff's claims were objectively unreasonable; (2) Plaintiff acted with an anti-competitive motive and purpose in bringing suit; (3) Plaintiff litigated the case in an unreasonable manner; and (4) an award of attorneys' fees would advance considerations of compensation and deterrence. *See generally* Dkt. No. 144. Their arguments do not convince the Court that this is an "exceptional case."

## I.     Plaintiff's Claims Were Not Objectively Unreasonable

A case may be "objectionably unreasonable" in either its factual or legal components. The standard looks to whether the plaintiff has presented "exceptionally meritless claims [that]

7

sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane Fitness*, 572 U.S. at 555.  That a claim is "ultimately unsuccessful" is not sufficient to warrant an award of attorneys' fees if it has "clear bases in law." *Stephen T. Greenberg, M.D., P.C. v. Perfect Body Image, LLC*, 2022 WL 275378, at *1 (2d Cir. Jan. 31, 2022).  "The Second Circuit . . . has defined 'objective unreasonableness' for legal theories as 'whether the argument is frivolous, i.e. the legal position has no chance of success, and there is no reasonable argument to extend, modify, or reverse the law as it stands.'" *PaySys Int'l, Inc. v. Atos Se*, 2019 WL 2051812, at *9 (S.D.N.Y. May 9, 2019) (quoting *Star Market Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.2d 170, 177 (2d Cir. 2012)).  Put otherwise, "[a]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Reply All Corp. v. Gimlet Media, Inc.*, 2021 WL 1291103, at *2 (E.D.N.Y. Apr. 5, 2021) (quoting *Livingston v. Adirondack Beverages Co.*, 141 F.3d 434, 437 (2d Cir. 1998)).

Defendants have not established that Plaintiff's case was objectively unreasonable.  As the Court concluded in its findings of fact and conclusions of law, Plaintiff had an incontestable mark and Defendants' marks were similar in sound and effect.  Jackpot.com was seeking to offer the same product as Jackpocket and to compete for the same customers.  And Plaintiff made considerable expenditure in promoting its mark and had achieved sales success by doing so.  All of those factors made it objectively reasonable—based on both the facts and the law—for Plaintiff to bring suit.  The fact that Plaintiff lost its lawsuit does not mean that it was unreasonable for Plaintiff to bring the lawsuit in the first place.  The Court concluded that Plaintiff's mark was weakly suggestive, that Plaintiff had not offered sufficient evidence of acquired strength or of actual confusion, and that Plaintiff's logo and Defendants' proposed logo

were not confusingly similar, but at no point did the Court conclude that Plaintiff's arguments were frivolous or weak. *See SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 352 (S.D.N.Y. 2019) ("That those arguments were unsuccessful does not mean that they were unusually weak or that it was objectively unreasonable to take [them] to trial.").

Defendants' arguments to the contrary are unpersuasive. Defendants focus on the Court's rejection of Plaintiff's recognition and confusion surveys as demonstrative of the objective unreasonableness of Plaintiff's lawsuit. Dkt. No. 144 at 23–24. But Plaintiff had a colorable argument that, because its mark was suggestive, it need not have produced a recognition survey at all—its mark would be presumed to be strong. Introduction of a flawed survey does not render Plaintiff's lawsuit objectively unreasonable if Plaintiff was arguably not required to submit a survey at all. And, while the Court found numerous flaws in Plaintiff's survey, the Court also found flaws in Defendants'. *See* Dkt. No. 125 at 114–15. As the Court noted in its findings of fact and conclusions of law, surveys are imperfect instruments that require judgment calls. *See id*. at 107. Both parties made incorrect judgment calls and presented the Court with flawed surveys, as is often the case in litigation, especially when it is conducted under an expedited timeline. That fact alone hardly renders this case an exceptional one or its claim so objectively unreasonable as to warrant an award of fees. As other courts in this District have found, the failure to submit a confusion survey or rejection of a survey does not merit an award of attorneys' fees. *See, e.g.*, *Louis Vuiton Malletier, S.A. v. My Other Bag, Inc.*, 2018 WL 317850, at *2 (S.D.N.Y. Jan. 8, 2018), *aff'd*, 764 F. App'x 39 (2d Cir. 2019); *Conopco, Inc. v. Cosmair, Inc.*, 49 F. Supp. 2d 242, 259 (S.D.N.Y. 1999) (Rule 11).

Defendants also argue that the Court should find the case to be objectively unreasonable because the Second Circuit's decision in *RiseAndShine* "issued just two weeks after Plaintiff filed its Complaint, exposed the facial weakness of Plaintiff's claims." Dkt. No. 144 at 22. Further, Defendants argue that Plaintiff's lawsuit is objectively unreasonable because it sought to enjoin Defendants from using the descriptive term "jackpot," even though Plaintiff never claimed a protectable right in the term "jackpot," and because Plaintiff misleadingly suggested that Jackpot.com's operations overseas were illegal.[2] Dkt. No. 144 at 22-23. None of these arguments is meritorious. The Court found *RiseAndShine* to be "instructive" based on the view that its result and "the rule that derives" from it "would not have changed if the weak, suggestive mark contained additional letters that d[id] not meaningfully change [the mark's] pronunciation, visual identity, or meaning to the average consumer." Dkt No. 125 at 74. Plaintiff, however, presented nonfrivolous arguments for a different application of *RiseAndShine*. *See id.* Even then the conclusion that Plaintiff's marks were weak was not dispositive of the case, but only required it to show more in terms of acquired strength. Furthermore, that the mark used by Defendants was descriptive did not mean that Plaintiff had no basis to seek to enjoin its use. The Court ruled that "a finding of infringement *could* rest on a common element 'jackpot,'" *id.* at 165 (emphasis added), but the mark holder would have to establish sufficient secondary meaning, *see id.* at 165–66. Finally, while the Court found that there was no evidence that Defendants had engaged in illegal activity outside the United States, *id.* at 123–24, Plaintiff was not without a basis to

---

[2] Defendants also suggest that the Court should award it fees because "Plaintiff did not prevail on a single contested *Polaroid* factor." Dkt. No. 144 at 23. But Defendants also did not prevail on every contested *Polaroid* factor; the Court found some of the *Polaroid* factors to be neutral. And that Plaintiff did not prevail on any single *Polaroid* factor does not mean that Plaintiff's arguments were weak or meritless; it merely means that Defendants' arguments and evidence were at least as strong as those of Plaintiff.

argue that its products could be tarnished by a perception that they were from the same source as Defendants, because Defendants might be perceived as having engaged in activities abroad that—if pursued in the United States—would be illegal.

## II. Defendants Are Not Entitled to a Fee Award on the Grounds that Plaintiff Had a Bad Faith Motive

Defendants' arguments that Plaintiff had an anti-competitive motive fare no better. The courts have authority to award attorneys' fees under the Lanham Act when the losing party has acted with an improper motive. "The paradigmatic case of improper motive justifying an exceptional case finding is where a plaintiff with no intention of testing the substance of its theories brings meritless claims to extract a nuisance value settlement based on the fact that defendants will be required to expend tens or hundreds of thousands of dollars in discovery." *Reply All Corp.*, 2021 WL 1291103, at *2 (quotation marks omitted) (quoting *Universal Church, Inc. v. Universal Life Church/ULC Monastery*, 2019 WL 4601741, at *4 (S.D.N.Y. Sept. 19, 2019)).

This case falls far afield from that paradigmatic case. Plaintiff litigated this case to enforce its trademarks and to prevent Defendants from using in commerce a mark that Plaintiff reasonably claimed could confuse consumers and dilute the value of its own mark. It did so by filing a motion for a preliminary injunction, by seeking a permanent injunction, and by engaging in a trial on the merits—and at all stages of the litigation, Plaintiff forcefully presented its legal theories and subjected them to judicial scrutiny. It also did so at considerable expense to itself, incurring $2.5 million in attorneys' fees through trial. Dkt. No. 154 ¶ 5;[3] *see Universal Church*,

---

[3] To the degree that Defendants' reply can be construed as a motion to strike new evidence not previously submitted to the Court, Dkt. No. 162 at 2–3, that motion is denied. Federal Rule of Civil Procedure 54(d)(2), which governs motions for attorneys' fees, requires a court, "on a party's request, [to] give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78." Fed. R. Civ. P. 54(d)(2)(C). In turn, Rule 43(c) states that "[w]hen a

2019 WL 4601741, at * 4 (denying request for fees where "plaintiff tested its claims, presumably at considerable cost, and lost").  It did not attempt to extort a nuisance value settlement from Defendants.  Nor is there evidence that Plaintiff used the lawsuit to gain leverage to maintain a future business relationship with Defendants.  *See Sleepy's LLC v. Select Comfort Wholesale Corp.*, 612 F. Supp. 3d 115, 134 (E.D.N.Y. 2020).  Its only request was that Defendants cease using the JACKPOT.COM Marks.  Prior to trial, Plaintiff proposed that the parties settle the matter:  In exchange for Defendants agreeing not to use the JACKPOT.COM Marks in connection with any lottery products or services in the United States, Plaintiff offered to pay Defendants a lump sum payment and not to challenge Defendants' use of the JACKPOT.COM Marks in connection with other services or their use of "another name (distinguishable from JACKPOCKET)" for its lottery products or services.  Dkt. No. 153-1; Dkt. No. 154 ¶ 3.

Defendants argue that "Plaintiff brought this case not to vindicate its trademark rights, but to delay Jackpot.com's U.S. launch[ and] to deplete Jackpot.com's funds raised in support of its launch."  Dkt. No. 144 at 17.  Defendants thus attempt to fit this case in the category of cases where courts have found that the losing party improperly brought a lawsuit as a "competitive ploy."  *See id.* at 16–19.  The cases upon which Defendants rely, however, involve the instigation of Lanham Act litigation "to advance an ulterior motive," not to enforce trademark rights.  *Benihana of Tokyo, LLC v. Benihana, Inc.*, 2018 WL 3574864, at *9 (S.D.N.Y. July 25, 2018), *aff'd*, 771 F. App'x 71 (2d Cir. 2019); *see also Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 75, 77 (2d Cir. 1986) (awarding attorneys' fees where plaintiff brought Lanham Act

---

motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions."  Fed. R. Civ. P. 43(c).  To the degree that Jackpocket's newly offered evidence weighs on whether Plaintiff's lawsuit was an exceptional case, and only for that purpose, the Court will receive this evidence on this motion.

claim in bad faith merely to join in profits of defendant and not to adjudicate its trademark claim and knowing that it did not have a valid trademark); *Vidivixi, LLC v. Grattan*, 2016 WL 4367972, at *3 (S.D.N.Y. Aug. 13, 2016) (awarding attorneys' fees where plaintiff tried to register a trademark that jointly belonged to him and the defendant in the name of a fictitious company and then "pursued baseless claims such as trademark remedies on a void trademark" as a "competitive ploy to seize partnership property," including five pieces of furniture plaintiff converted during the litigation); *Anastasia Intern., Inc. v. EM Online Pty Ltd.*, 2013 WL 5550211, at *3 (S.D.N.Y. Oct. 4, 2013) (awarding attorneys' fees where plaintiff filed three iterations of the same complaint against its competitor without ever alleging a basis for its lawsuit in fact or law); *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 657 (S.D.N.Y. 1983), *aff'd*, 742 F.2d 1437 (2d Cir. 1984) (granting costs and fees based on inference that lawsuit against a competitor was initiated as a competitive ploy, where plaintiff never registered its mark, never sought to enforce it against others, and failed to show secondary meaning and likelihood of confusion).

This lawsuit, to the contrary, was launched to enforce Plaintiff's trademark rights against conduct that Plaintiff believed in good faith infringed on those rights. Plaintiff's request for relief was targeted to Defendants' use of the JACKPOT.COM Marks, which it claimed were confusingly similar to, and constituted an infringement of, its incontestable mark in the phonetically similar Jackpocket. The request for relief in its complaint sought an injunction not against Jackpot.com entering the United States market but in it doing so by "using, registering, or seeking to register any name, mark, logo, trade name, company name, source identifier, or designation comprised of or containing the JACKPOCKET Marks or any other confusingly similar name, mark, logo, trade name, company name, source identifier, or designation

13

(including JACKPOT) in any manner likely to cause confusion with Jackpocket's

JACKPOCKET Marks, or to otherwise injure Jackpocket and/or its reputation."  Dkt. No. 1 at

ECF pp. 28–29.  The injunctive relief sought by Plaintiff in its motion for a preliminary

injunction likewise was limited to an order enjoining Jackpot.com from "using, displaying, or

promoting the JACKPOT[.COM] Marks for Lottery Courier Services in the" United States.  Dkt.

No. 20 at 25; *see also* Dkt. No. 182 at 91 (same in pretrial memorandum).  Thus, Plaintiff did not

seek to prohibit Defendants from entering the United States lottery courier service market; rather,

it sought to prohibit their entry into the market using marks that it believed were confusingly

similar to its own.  There also is no evidence that Plaintiff multiplied the proceedings or engaged

in conduct to cause Defendants to deplete the funds they intended to use for its United States

launch.  It was Defendants, not Plaintiff, who successfully moved for expedited and limited fact

and expert discovery, Dkt No. 76, which Plaintiff resisted on the grounds that such discovery

would impose unnecessary costs on it, Dkt. No. 77.  And Plaintiff did not object to the Court

consolidating the hearing on the motion for a preliminary injunction with a trial on the merits

under Federal Rule of Civil Procedure 65, which expedited the trial on the merits, saving the

parties and the Court time and resources.  *See* Dkt. No. 100.  This is behavior consistent with a

party seeking to litigate to enforce what it believed were its rights in its trademarks.

    To be sure, the Court ultimately concluded that the grant of an injunction "would

impermissibly impede competition."  Dkt. No. 125 at 127.  But a conclusion that an injunction

would have that effect does not mean that Plaintiff initiated the litigation solely or even primarily

for that purpose; Plaintiff could have, and the Court concludes that Plaintiff did, initiate the

litigation to protect its trademark against what it reasonably (but incorrectly) viewed as

infringement.  Virtually every trademark infringement lawsuit will aim to protect the plaintiff's

business against a competitive threat posed by the alleged infringer; the concern in virtually every trademark case is that a competitor, by using a mark that is confusingly similar to that of the plaintiff, will steal market share from the plaintiff. This reality is built into the *Polaroid* test, which looks not just to the alleged similarity of the marks in isolation, but, *inter alia*, "the proximity of the parties' areas of commerce," "the likelihood that the plaintiff will bridge the gap separating their areas of activity," and evidence of "actual consumer confusion." *Polaroid Corp.*, 287 F.2d at 495. It would be a rare Lanham Act plaintiff, who undertook the expense and burden of litigating a claim, without the intention of protecting its competitive position. It is for that reason that the court must act with care. The profligate exercise by the court of its injunctive powers—the issuance of an injunction broader than necessary to protect the mark—can result in protection not just of the mark but also of the markholder. Those concerns were particularly pronounced in this case where (a) Plaintiff's marks were weakly suggestive; and (b) Defendants had an interest—albeit not a protectable one—in using in the United States a brand it had used successfully in over 180 other countries as a "muscular . . . marketing tool," *see RiseandShine Corp.*, 41 F.4th at 122. The practical effect of an injunction would have been to reserve to Plaintiff a word that was both descriptive of its product and that of Defendants, and to require Defendants to go to the cost and expense of rebranding its product before a United States launch. That relief would have been appropriate and supported by the Lanham Act had Plaintiff established acquired strength in its mark and a likelihood of confusion. The Court found that Plaintiff had not. But the fact that Plaintiff ended up on the losing side of the case does not mean that it launched the lawsuit for an improper motive or that its lawsuit was exceptional.

Defendants spill much ink on what the Court characterized as "Jackpocket's other efforts to preserve its competitive head start." Dkt No. 125 at 32–35. Specifically, Defendants point to

actions that Plaintiff took to stifle competition in the lottery courier service market, including working with regulators to bar entry of competitors, coordinating with the press to amplify negative facts about Jackpot.com, seeking help from a lottery commission to prevent Jackpot.com from securing a sponsorship deal with a major sports team, and using Jackpot.com's confidential information and mischaracterizing Jackpot.com's overseas business to paint Jackpot.com in a negative light in communications with regulatory agencies.  Dkt. No. 144 at 17–19.  Defendants argue that these anti-competitive actions establish that Plaintiff initiated this lawsuit for an anti-competitive motivation.  *Id.* at 19.  An anti-competitive motivation alone, however, is insufficient to merit an award of attorneys' fees.  As noted, all of the cases that Defendants cite in support of their argument involve trademark actions that were themselves frivolous.  *See supra* pp. 12–13.  Thus, the only reason that the lawsuit was brought in those cases was for anti-competitive purposes.  The same is not true here:  Plaintiff had a protectable interest in a trademark that it sought to enforce on non-frivolous factual and legal bases that ultimately did not prevail.  The conduct that Defendants highlight, all of which was collateral to Plaintiff's trademark, stemmed from Plaintiff's status as the first mover creating the market for lottery courier services and might be expected of any company which, by virtue of having made the investment and taken the risk to be a pioneer, has achieved a dominant market share.  It would not, of itself, deprive Plaintiff of the right to enforce its marks or impose on Plaintiff, if it did not prevail, the obligation to pay Defendants' litigation costs.  *See Sleepy's LLC*, 909 F.3d at 531 n.7 (noting that "it is not self-evident" that "objectionable and inappropriate [conduct] . . . alone could convert an otherwise-reasonable response . . . (investigation and litigation) into a bad-faith competitive ploy").

**III.     Plaintiff Did Not Litigate the Case in an Unreasonable Manner**

Defendants next argue that they should receive an award of attorneys' fees because Plaintiff litigated the case in an unreasonable manner.  Dkt. No. 144 at 24–25.

"[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  *Octane Fitness*, 572 U.S. at 555.  "'[M]ost cases awarding fees,' however, 'involve *substantial* litigation misconduct.'"  *Louis Vuitton Malletier, S.A.*, 2018 WL 317850, at *3 (emphasis in original) (quoting *Small v. Implant Direct Mfg. LLC*, 2014 WL 5463621, at *4 (S.D.N.Y. Oct. 23, 2014)); *see also Hockeyline, Inc. v. STATS LLC*, 2017 WL 1743022, at *5 (S.D.N.Y. Apr. 27, 2017) ("[M]ost post-*Octane* cases awarding fees continue to involve substantial litigation misconduct."); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2016 WL 1328936, at *3 (S.D.N.Y. Apr. 5, 2016), *aff'd*, 679 Fed. Appx. 33 (2d Cir. 2017) (awarding fees where "bad faith litigation tactics" necessitated "burdensome and time-consuming" responsive measures); *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 170 (S.D.N.Y. 1999) ("[T]he sort of misconduct that supports an attorney fees award includes not only willful infringement, but also willful defiance and protraction of judicial processes attempting to stop the illegalities.").

Plaintiff did not litigate this case in an unreasonable manner.  It submitted well-prepared legal memoranda, making responsible and powerful—albeit ultimately unsuccessful— arguments.  It presented facts in support of its claim and called its Chief Executive Officer and founder to testify at trial.  It subjected itself to discovery and conducted appropriate examinations of Defendants' witnesses.  Throughout the litigation, Plaintiff conducted itself in a highly professional manner.

Defendants offer two examples of unreasonable conduct by Plaintiff, neither of which are persuasive.  Defendants argue, first, that Plaintiff acted unreasonably in resisting expedited discovery.  Dkt. No. 144 at 24.  It is true that Plaintiff argued that the Court should decide its motion for preliminary injunctive relief without expedited discovery, *see* Dkt. No. 77, but arguing against expedited discovery was not unreasonable.  Plaintiff had the burden of proof on the motion for a preliminary injunction.  If it thought that it could meet that burden without the need for discovery, Plaintiff was entitled to submit that argument to the Court.  Moreover, Defendants themselves repeatedly took the position that neither an evidentiary hearing nor expedited discovery was necessary for the Court to rule on the motion for a preliminary injunction, *see, e.g.*, Dkt. No. 81 at 4 (stating at the August 8, 2022 conference held for the purpose of whether an evidentiary hearing and expedited discovery were necessary that "we believe it's appropriate for the Court to proceed on the papers and not hold an evidentiary hearing. . . . [W]e think the Court can and should proceed with the filings that it has."); Dkt. No. 62 (joint letter dated August 15, 2022) ("The Parties continue to agree that no evidentiary hearing is necessary, and that the issues raised by the motion can effectively be addressed at the oral argument."), before reversing course thirty-five days before oral argument was scheduled on the motion and after Defendants had retained new counsel, Dkt. No. 76.  It is difficult to credit the argument that Plaintiff was unreasonable in resisting discovery when Defendants themselves took the position that discovery was not necessary.

It also was not unreasonable, nor exceptional, for Plaintiff to resist Defendants' efforts to submit a new and previously undisclosed expert report.  *See* Dkt. No. 87.  Plaintiff argued that the additional expert report went beyond the scope of the limited expedited discovery ordered by the Court and that Defendants unduly delayed in submitting the expert report and survey.  *Id.* at

1–3.  Though the Court disagreed with Plaintiff's contentions, *see* Dkt. No. 89 (order denying motion to preclude), there was nothing about Plaintiff's motion or the arguments made therein that were unreasonable.

Second, Defendants argue that "Plaintiff improperly withheld nearly 55,000 pages" of discovery.  Dkt. No. 144 at 24.  However, Defendants acknowledge Plaintiff agreed to produce and did in fact produce the documents without the Court's intervention.  *See id.*; Dkt. No. 121. The fact that the discovery came on the eve of the closing arguments also is not grounds to conclude that Plaintiff litigated this case unreasonably; this case proceeded on an expedited basis and it is not unusual for the parties to exchange documents on the eve of trial.  Finally, Defendants have not demonstrated that they suffered any prejudice as a result of the production, and Defendants could have asked for an adjournment to sort through the new production.  In contrast, Defendants represent that the discovery contained "damning evidence," which Defendants presented to the Court and which "the Court relied upon in its Opinion."  Dkt. No. 144 at 24–25.  *See Bogopa Service Corp. v. 3370 Halal Food Bazaar Inc.*, 2022 WL 813812 (E.D.N.Y. Mar. 16, 2022) (denying request for attorneys' fee award because the plaintiff could not "point to any substantial litigation misconduct [that] occurred" (internal quotation marks and citation omitted)); *Omega SA v. 375 Canal LLC*, 2019 WL 2442434, at *4 (S.D.N.Y. June 12, 2019), *aff'd*, 984 F.3d 244 (2d Cir. 2021) (denying attorneys' fees because the defendant's litigation conduct did not "rise to a level sufficient to justify a fee award," even when defendant's conduct "led to some inefficiencies").

The two out-of-circuit cases on which Defendants rely, *Dropbox, Inc. v. Thru Inc.*, 728 F. App'x 717 (9th Cir. 2018), and *Reflex Media, Inc. v. Richard Easton Ltd.*, 2022 WL 17852772 (D. Nev. Dec. 21, 2022), are readily distinguishable.  In *Dropbox*, the Ninth Circuit affirmed an

award of attorneys' fees against the defendant who filed trademark counterclaims that were

"wholly lacking in merit," "filed a frivolous motion to dismiss and gave inaccurate responses to

discovery requests," and tried to "slow walk" its dispute with the plaintiff to take advantage of

the plaintiff's initial public offering.  728 F. App'x at 719–20.  In *Reflex Media*, the court

awarded fees to the plaintiff, the prevailing party, where the defendant had engaged in deliberate

misconduct and had "refus[ed] to respond to discovery requests, thereby delaying discovery,

until the Court compelled him to do so."  2022 WL 17852772, at *1.  Defendants have not

presented any evidence that Plaintiff engaged in conduct approaching the conduct that justified

the award of attorneys' fees in either case.

**IV.     Considerations of Deterrence and Compensation**

Finally, Defendants argue that an award of attorneys' fees is needed to satisfy the

interests of deterrence and to advance considerations of compensation.  Dkt. No. 144 at 21.

Those arguments are ill-founded.

The interests of deterrence do not support a fee award.  This is not a case in which a party

"misus[ed] intellectual property laws to threaten competitors with ruinous damages from

lawsuits that have no merit but take time and expense to defend."  *Gym Door Repairs, Inc. v.*

*Young Equip. Sales, Inc.*, 2021 WL 1172335, at * 4 (S.D.N.Y. Mar. 26, 2021) (adopting

magistrate judge's recommendation for Lanham Act attorneys' fee award where plaintiffs

pursued untenable claims that had been rejected in other cases, threatened "crippling damages of

over $60 million at the outset of the litigation but ultimately claimed damages of about

$500,000," and presented a case that survived a motion to dismiss "but eventually crumbled in

response to a motion for summary judgment").  Plaintiff was seeking to enforce a mark that had

become incontestable.  "[T]he law compels trademark owners to police their marks or risk losing

their rights." *Louis Vuitton Malletier, S.A.*, 2018 WL 317850, at *3; *see Universal Church*,

2019 WL 4601741, at *4.  Defendants have presented the Court with no evidence that Plaintiff was acting as a "trademark bully."  *Louis Vuitton Malletier, S.A.*, 2018 WL 317850, at *3. Defendants have not "identified a 'broader pattern of [Plaintiff's] conduct' that this Court should discourage."  *Universal Church*, 2019 WL 4601741, at *4 (citation omitted).  Plaintiff has never before filed a trademark lawsuit.  In fact, Plaintiff has never filed any lawsuit in either state or federal court in its nearly ten-year history.  Dkt. No. 154 ¶ 2.  The public interest would not be served, but rather would be disserved, by sending a message that would deter those with registered incontestable marks from bringing suit to defend and enforce those marks.  *See Universal Church*, 2019 WL 4601741, at *4.

Nor do the interests of compensation support an award of fees.  Defendants argue that, by virtue of this lawsuit, Plaintiff was able to delay Jackpot.com's planned United States launch, to force Jackpot.com to divert significant capital to defend against the lawsuit, and to generate negative (and false) publicity against Jackpot.com.  Dkt. No. 144 at 20–21.  But the decision to delay the launch was not one that Defendants were compelled to make.  There was no injunction that required Defendants to take that action.  Defendants did so of their own volition, presumably because Defendants intended to use a mark that was phonetically similar to Plaintiff's marks and because Plaintiff presented a colorable claim that Defendants had engaged in trademark infringement.  That the claim was ultimately unsuccessful does not require Plaintiff to compensate Defendants for the costs incurred in defending this lawsuit and in preserving their right to use their brand name in the United States on a going forward basis.

## CONCLUSION

The motion for an award of attorneys' fees is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 142.


SO ORDERED.


Dated: June 23, 2023
      New York, New York

LEWIS J. LIMAN
United States District Judge